Brief for appellants.

82    93|
*86   546|

O'BRIEN BROTHERS ET AL. *v.* GEORGE A. WILSON, ADMIN-
ISTRATOR, ET AL.

1. EXECUTORS AND ADMINISTRATORS. *Appraisers.*
    An administrator has nothing to do with the appointment of ap-
    . praisers.

2. SAME. *Liability.*
    An administrator is not chargeable with property of which he had
    no knowledge and is bound only to exercise the care of a pru-
    dent man in the management of his own business.

3. SAME. *Detention of exempt property by widow.*
    Where all the property left by a decedent, including money, did
    not equal the exemption to which his widow was entitled, neither
    the administrator nor any one else can take the money from her
    or hold her liable for it, no exemption having been set aside to
    her.

4. SAME. *Deed of trust sale. Purchaser.*
    An administrator may buy lands which belonged to his intestate
    from a purchaser, who, in good faith, acquired the title thereto
    at a valid sale under a deed of trust executed by the intestate.

FROM the chancery court of Leflore county.

HON. A. MC. KIMBROUGH, Chancellor.

O'Brien Bros. and others, appellants, were complainants,
and Wilson, administrator, and others, were defendants, in the
court below. From a decree dismissing the bill complainants
appealed to the supreme court. The facts are fully stated in the
opinion of the court.

*S. R. Coleman,* for appellants.

There was a breach of the conditions of the bond when the
administrator failed to file a legal inventory of the estate. The
inventory filed by him shows certain cotton without giving the

weight, price or to whom sold, and some money collected. Wilson qualified as administrator on January 18, 1900.

We find that the two notes referred to by him are not liens upon the funds in his hands, said funds being from the proceeds of crop of 1899, and said two notes not falling due until 1901 and 1902, and were liens on the crops of those years only. This misappropriation of the funds was a waste, and his bond was liable.   7 Am. & Eng. Enc. Law (1st ed.), 720; 73 Miss., 179.

What is the significance of this action by the administrator? On February 20, 1901, before this petition and order of court thereon, the administrator had, for the sum of $1,500, purchased a half interest in the estate, subject to the debts, from M. J. Bounds, the widow of W. A. Bounds, and she had purchased in February, 1900, under the deed of trust from herself and husband to H. A. McDonald.   It was then to Wilson's advantage to pay off his debts on the property rather than the other creditors.   Should this be allowed?   Not when the two notes for the purchase money were not liens, and they were not upon the proceeds of the crop of 1899.

Wilson is now the owner of the entire estate, while his administration is still pending.   We ask for a decree of reversal.

*Gwin & Mounger,* for appellees.

An administrator cannot be charged with property of the existence of which he was ignorant, or which never came into his hands.   11 Am. & Eng. Enc. Law (2d ed.), 973.

"An administrator is nothing but a trustee, bound for the care and caution of an ordinarily watchful man, nothing more." *Conwill* v. *Livingston,* 61 Miss., 641;   Brame & Alexander's Digest, 453, 454;   George's Digest, 281, § 130.

Moreover, this $200, the corn, stock of goods and all property alleged to have been taken by the widow Mrs. M. J. Bounds, do not amount to as much as she was entitled to take as exempt property for the support of herself and two children.

If she saw fit to hold and use this property, no exempt property being set aside to her, no one can complain.   The administrator could not have taken it from her, and he is not liable for its value.   *Grafton* v. *Smith,* 66 Miss., 408; *Jackson* v. *Wilson,* 117 Ala., 432; s. c., 23 So. Rep., 421.

It was not the duty of the administrator to have appraisers appointed, and, when the matter was brought to the attention of the court, appraisers were appointed.

Calhoon, J., delivered the opinion of the court.

These proceedings commenced with a bill in chancery filed September 4, 1901, by divers creditors of W. A. Bounds, deceased, against G. A. Wilson, the administrator of his estate, and the sureties on his bond.   They charge the indebtedness of the estate to them severally, and that the decedent left a large real and personal estate, the latter consisting of mules, horses, wagons, farming implements, agricultural products, a stock of goods such as are usually kept by planters to supply tenants and employees, and debts due deceased.

They claim that Wilson, as administrator, has never filed an inventory, as required by law, and that no appraisers have been appointed, and claim that the fact of not returning an inventory was a breach of the conditions of the bond, and made the administrator liable for the amount of the complainants' claims.   They charge that the decedent died owning large bodies of land bought on credit from various persons, secured by vendors' liens and trust deeds, and that one J. S. McDonald, who was president of the Delta Bank, and who died in 1898, before W. A. Bounds, who died January 11, 1900, was interested with Bounds in his real and personal property, including the mercantile business, and participated in the profits from all, and that, after McDonald died, Bounds executed a pretended deed of trust on lands and personalty to secure a pretended loan from Mrs. H. A. McDonald, the mother of J. S., in the sum of $20,000, and that it was foreclosed and sold for $26,650

after Wilson became administrator of Bounds' estate, whose widow, M. J. Bounds, bought, $20,000 being for the land and $6,650 for the personal property, which they charge should have gone to the administrator to pay debts.    That Wilson was also administrator of J. S. McDonald's estate, and, besides, was his immediate successor as president of the Delta Bank, and knew all about the property of W. A. Bounds.

They charge that the widow, Mrs. M. J. Bounds, after buying at the trustee's sale, conveyed an undivided one-half interest to the heirs of J. S. McDonald, who reconveyed to her, and she recently conveyed the one-half interest to Wilson in his individual capacity, and he, as administrator, declines to pay the unsecured debts, but has applied all the funds to the lien and trust debts, which they say is a fraud, and that, in a pretended inventory, he charged himself with the value of certain agricultural products only, and claims that he applied the proceeds to trust debts; and they say that these products were raised on other than trust lands, and much of them belonged to tenants and employees, who delivered them to pay debts they owed Bounds.

The prayer is for decree for payment of complainants' claims, the appointment of appraisers, and that the administrator render complete inventory, and disclose what partners Bounds had, and their liability, if any, and for general relief.

This bill is not sworn to, and answer under oath is not waived, and there is no proof whatever to support several of its allegations.

In their answer, which is sworn to, the defendants deny all charges of fraud and pretense, and, in fact, each and every inculpatory charge in the bill.    They deny that W. A. Bounds had a considerable stock of goods or debts due him when he died, and assert that all his land and personalty was incumbered to its value.    They deny that the administrator did not file a full inventory, and say he did, and it is made an exhibit. They deny any partnership or interest in profits of J. S. Mc-

Donald with Bounds. They aver that Mrs. Bounds was a *bona fide* purchaser of all the property, and that her conveyance to the heirs of J. S. McDonald of a one-half interest was not to take effect until after the property paid itself out of debt, as per the instrument of conveyance, and these heirs reconveyed to her, and she conveyed this interest to Wilson with no interest in income, but to take effect only when all debts were paid.

The record shows that Wilson was duly appointed the administrator of the estate of W. A. Bounds January 11, 1900, and that he filed an inventory on March 16, 1900. Incorporated in the present record is a separate proceeding by the complainants herein to remove Wilson as administrator, based on practically the same grounds as set forth in the bill here, but the court sustained the inventory, and refused to discharge the administrator.

The inventory shows 174 bales of cotton, of total vale of $7,862.29, and it does not appear that any was omitted or that the price for which they were sold is not all right, or that creditors were in any way injured. The inventory shows that the land, stock, wagons, and farming implements had been taken and sold by the trustee in a deed of trust to W. A. McDonald for a debt of $27,000. There is no evidence of the invalidity of this debt, or in the sale made to pay it. On the contrary, it appears that the property brought full value, and so creditors are not hurt by this. Insolvency proceedings were begun by the administrator, and properly, so far as the record discloses. The debts to complainants were contracted after the execution of the trust deed.

An administrator has nothing to do with the appointment of appraisers.

It seems that W. A. Bounds in his lifetime bought various large tracts of land on credit, and was very much involved, the aggregate amount of indebtedness exceeding $40,000, and his hope was to work these places out of debt. We are con-

cerned here with only a part of his purchases. Among others, what is known as "Moore's Lake Place" was bought, and the title vested in himself and his wife, Mrs. M. J. Bounds. Another place, known as the "West," or the "Beauty Place," he purchased at a large sum, and secured all the installment notes, amounting to about $20,000, by both vendor's lien and trust deed. He needed money in his farming operations, and, by arrangement, one J. S. McDonald accepted his draft to the vendor for $6,000 of the purchase price of this West place, and guaranteed the note of Bounds for the balance of the purchase money. In order to secure McDonald, Mr. Bounds gave a trust deed on this West place, which trust deed also covered money to be furnished by McDonald to run the two plantations, and he also agreed to convey his one-half interest in the Moore's Lake place, and in all his stock and farming implements, for which half interest McDonald paid him $1,500 in cash, but it was not to vest in McDonald until all the debts were paid. McDonald transferred this trust deed to the Delta Bank, of which he was president, the total debt secured by the trust deed being $20,000. J. S. McDonald died February 18, 1898, and defendant Wilson became his administrator and president of that bank. Mrs. H. A. McDonald, the mother of J. S. McDonald, loaned Bounds $20,000 to pay the Delta Bank, and agreed to furnsh him money to make a crop, and, to secure her, Bounds and his wife gave a trust deed covering both the Moore's Lake and West places, and they conveyed to the heirs of J. S. McDonald a one-half interest in the Moore's Lake place, not to take effect, however, until all the debts were paid. Mrs. McDonald carried out her agreement, and, when Bounds died on January 11, 1900, he owed her $26,500, and Mrs. McDonald wanted her money, but, it seems, everybody wanted to protect Mrs. Bounds as far as possible. Mrs. McDonald's son, J. B. McDonald, arranged with Mrs. Bounds that the whole property should be sold under the trust deed, and that, if Mrs. Bounds became purchaser, the necessary

money should be advanced to Mrs. Bounds. So Mrs. Bounds bought the land and personalty under the trust deed, and then gave a trust deed to secure Mrs. McDonald for the money advanced. This trust deed covered all the crops raised by Bounds in Leflore county, and all the stock, farming implements, etc. Pursuant to the same arrangement, Mrs. Bounds conveyed a half interest to the heirs of J. S. McDonald, to take effect when all the debts were paid. The McDonalds procured money for her, but the crops failed, and they declined to advance any more. This trust deed had also become the property of the Delta Bank. Mrs. Bounds then applied to Wilson, the president of the bank, and that bank increased her debt to the amount of $32,000, when it became manifest that she could not work the place out of debt, and the bank foreclosed the trust deed. Wilson bought, and Mrs. Bounds, who had become Mrs. Helm, sold to Wilson the whole interest for $2,500, subject to all the incumbrances. She had no interest, as she testifies, in this litigation, but is made a witness.

She testifies that she held back from the estate of W. A. Bounds $200 in money, and that Bounds left a stock of goods worth $1,500, and that there were sixteen bales of cotton in the administrator's hands not raised on the West place, and about 600 bushels of corn, and that Wilson knew, as administrator of W. A. Bounds, that this stock of goods was there, and about the $200. The matter in this paragraph really embraces the whole ground of complaint.

The matter of the sixteen bales of cotton has heretofore been mentioned.

Bounds had no interest in the Moore's Lake place when he died, and all the crops were covered by the trust deeds. Wilson testifies that he knew nothing about the stock of goods, or the $200 in money, or the corn. As to the stock of goods, two disinterested witnesses say that there was no such stock there, but only a few remnants not worth over $25, and a disinterested witness says that there was only sixty bushels of corn,

and this was mixed with other corn on the place. Besides this, it is clear that the trust deed to Mrs. McDonald carried the corn raised by Bounds anywhere in Leflore county, and was sold under that trust deed, and bought in by Mrs. Bounds to use by her, except what was used on the place before the sale. On the facts, the chancellor found against the creditors and in favor of Wilson.

An administrator is not chargeable with property of which he has no knowledge, and is bound only to exercise the care of a prudent man in the management of his own business. Besides, all this property, including the $200, would not equal the exemption to which Mrs. Bounds was entitled; and creditors of W. A. Bounds have no right to complain, as the administrator could not—nor any one else—take it from her, or hold her liable for it if she had held and used it, no exemption having been set aside for her.

The charge in the bill that there were collectible debts due by tenants or others to Bounds is without support; on the contrary, the reverse is shown by the proof.

It is clear from this record that Wilson did not desire to own any interest in the property, his purpose and wish being to secure it for Mrs. Bounds, and at the same time protect the Delta Bank, and, after he bought, he made unavailing efforts to sell at what he gave. He had tried to induce her second husband to invest, but he and his wife were opposed to putting any money into the property.

We know of no law or reason forbidding Wilson to buy the property from the purchaser under a trust deed. There is no evidence whatever that there was any fraud or pretense attending any of the loans of money, or any of the trust deeds, or the trust sale, and certain, it seems, there was no act of which the creditors of W. A. Bounds could complain, and these creditors had record notice of the trust when they extended the credit to W. A. Bounds.

We think the chancellor's conclusion was right.

*Affirmed.*