O'BRIEN BROTHERS *v.* GEORGE A. WILSON, ADMINISTRATOR.

1. DEEDS OF TRUST. *Debt due in annual installments.   Lien on crops.*

   In the absence of express terms to the contrary, a deed of trust, given to secure a series of notes, maturing one each year, conveying the crops to be grown on designated lands during said years, creates a specific lien on each year's crop to secure the note maturing that year, and not a running lien on all the crops produced during the term of years for the payment of each note regardless of the date of its maturity.

2. SAME. *Estates of decedents.   Administrator.   Payment of debts.*

   Where a decedent died owning a plantation incumbered by vendor's lien notes, which were secured as well by a deed of trust on the crops to be grown on the place for several years, and the entire assets of the estate consisted of the crops for one of the years, and the plantation was sold to satisfy a junior lien and bought in by the widow, who conveyed a half interest therein to the administrator as an individual, the deed to become operative only when the vendor's lien notes were satisfied, which notes the widow agreed with the administrator as an individual to pay, it was error, the estate being insolvent, for the chancery court to authorize the administrator to apply the money in his hands, the proceeds of the sale of the crops of one year, to the satisfaction of the vendor's lien notes maturing in years following that in which the crops were grown.

3. CHANCERY PRACTICE. *Code* 1892, § 1937.

   An *ex parte* petition of an administrator, erroneously stating that a lien exists on certain assets, and asking permission to apply the assets to the satisfaction of the alleged lien, is not a proceeding to test the validity of a claim of lien within the meaning of Code 1892, § 1937, which provides that the person claiming to have a lien on any property of a decedent may be made a party, to a proceeding by the administrator to test the validity of such claim to a lien, and an order of the chancellor entered on such petition directing the payment of the claim does not protect the administrator in making such payment.

FROM the chancery court of Leflore county.
HON. CAREY C. MOODY, Chancellor.

· 'O'Brien Brothers and others, the appellants, filed exceptions to the final account of Wilson, administrator of the estate of W. A. Bounds, deceased. These exceptions were disallowed by the court below, and the final account allowed as stated by the administrator. The exceptors appealed to the supreme court. The facts are fully stated in the opinion of the court.

[The case, or a branch of it, was once before the supreme court, and is reported. See *O'Brien Bros.* v. *Wilson,* 82 Miss., 93.]

*S. R. Coleman,* and *McWillie & Thompson,* for appellants.

The second exception is predicated of the action of the administrator in crediting himself with the sum of $3,276.84, being the amount due on one of several notes given by the decedent to J. B. West for the purchase money of the Beauty plantation, the credit being supported by the note, etc., as voucher 8 to his final account. It was one of five similar notes, each of which was for something over three thousand dollars, falling due, respectively, on the first days of January, 1898, 1899, 1900, 1901, and 1902, and secured by a deed of trust on said plantation and all crops to be grown thereon during the years 1897, 1898, 1899, 1900, and 1901.

W. A. Bounds died on January 11, 1900, and on February 1, 1900, the Beauty plantation, and two other plantations, known as the Moore's Lake and Steele places, and considerable live stock, implements, etc., were sold under another trust ·deed given by W. A. Bounds to Mrs. H. A. McDonald, after the execution of the one in favor of J. B. West. At this sale Mrs. M. J. Bounds, the widow of W. A. Bounds, became .the purchaser. On February 20, 1901, the appellee, Wilson, purchased from the widow an· undivided one-half interest in the Beauty and other plantations and the live stock, etc., thereon, the right of said Wilson to begin when the J. B. West debt and certain other lien debts should be paid. She afterwards conveyed to him the whole of

said property unconditionally. Shortly after his purchase of a half interest in the property from Mrs. Bounds, as above stated —that is to say, on April 8, 1901—Wilson, as administrator, applied $3,276.84 of the general assets of the estate of Bounds to the payment of the J. B. West note which fell due on January 1, 1901, the estate being then insolvent. The unsecured creditors cannot see the propriety of the action of the administrator in thus relieving the property of himself and Mrs. Bounds by paying a debt amply secured by said property out of the general assets and leaving them but an insignificant dividend.

Mrs. Bounds bought under the H. A. McDonald trust deed, subject to the trust deed in favor of J. B. West, and this occurred on February 1, 1900. The cotton crops of 1900 were subject to the prior lien of West's trust deed, and should have been appropriated *pro tanto* to this West note, which fell due on January 1, 1901. The administrator, who received cotton belonging to Bounds of the crop of 1899 of the value of $7,042.76, claims that the proceeds of this cotton were subject to the lien of the 1900 note which he paid, but does not show on which of the three places of Bounds it was grown.

It would seem that so far as the 1901 note is concerned the proceeds of this cotton should not have been diverted from the general assets of the estate. Where a planter gives a trust deed on his crops to meet notes maturing annually at the close of each season, it is only a rational interpretation of the instrument to say that the crops of each year are incumbered to the extent of the note falling due at the end of that year, that he is free to deal as he pleases with the surplus of the crops, and that a purchaser of such surplus from him would not be liable to account to the beneficiary of the trust deed. If this was not the intention of the parties, there was no occasion to designate the years specially, and the provision would have been made to include crops to be grown on the land for all succeeding years until the notes should have been paid. Moreover, it must have been recognized by the parties that surplus of the crop should go to

the debtor to enable him to make a crop out of which he might meet the next succeeding note. The rule that the rents and profits belong to the mortgagor, in the absence of an express stipulation to the contrary, should be applied here, and no further incumbrance of the annual crops be recognized than was sufficient to accomplish the end sought—that is to say, the payment of each of the annually maturing notes.

The court will note that we are considering only the ordinary trust deed of the country; and if it be not true that the surplus of the year's crop is free after discharging the lien of the note maturing at the close of that year, one of two results must follow—that is to say, the debtor must either pay the next note a year before it falls due or hold his cotton for twelve months in order to meet it when it does fall due. The instrument cannot be given this absurd interpretation.

In the present case the administrator, as shown by his final account, paid the note which fell due on January 1, 1900, out of the crops of 1899, and no objection is made to that payment; but he should have required West to subject the crop of 1900 to the discharge of the lien securing the note falling due on January 1, 1901, for although the property had been purchased by Mrs. Bounds under another trust deed, West had a paramount lien upon the crops of that year, and the record in No. 10694 shows that a crop was made on the land that year.

It is not pretended that West did not have in 1901 an ample security for the unpaid balance of his debt outside of the funds in question, and the administrator owed it to the distributees to have a marshaling of securities and the exhaustion of the other property subject to the trust deed before diverting these funds of the general estate. It was immaterial to West from what source payment came, and Mrs. Bounds had not only purchased all the property subject to his lien, but was allowed to take the very crop of 1900 that should have been applied in payment of the 1901 note.

Under the terms of the West trust deed the beneficiary might

have proceeded to foreclose for the whole debt on the partial default resulting from the failure of Bounds to pay the note maturing January 1, 1900, which was but a few days before the latter's death. But he did not elect to take possession and sell, and in less than a month after Bounds' death he accepted payment of that note, which was the only one then due. He doubtless knew his security was ample, and wanted to hold on to the interest-bearing investment. But whatever may have been the cause, he no longer had the right to foreclose after accepting payment, and it became wholly immaterial that he had been for a short time in a position to insist on payment of the whole debt.

*Gwin & Mounger,* for appellee.

These exceptions were passed on and decided in the case of *O'Brien Bros. et al.* v. *G. A. Wilson et al.,* 82 Miss., 93. The matter of the stock of goods and the matter of the payment of the note were both pressed upon the attention of the court, and neither of these grounds of exception was overlooked by the court. The court discusses all of the facts in evidence relating to the stock of goods in 82 Miss., 99, 100, and decided that the finding of the chancellor upon these facts was correct.

The court was fully advised in rendering the decision in that case; there was no oversight on its part; and the identical questions involved in this case were passed upon in that, and the case is *res adjudicata* as to all of the excepting creditors as to all of the contentions in this case.

The second exception had no more foundation than the first. The deed of trust given by Bounds to West incumbered the several crops made on the West place during the years 1897, 1898, 1899, 1900, and 1901. The language of the instrument is as follows: "The said party of the first part intends to convey, and does hereby convey, unto said trustee all of the lands, . . . as also all the crops of cotton, corn, and all other agricultural products grown on or yielded by said lands during the years

1897, 1898, 1899, 1900, and 1901, and· also all rents, issues, profits, income, and benefits yielded by or arising from said land during said years," etc. The purpose of said conveyance is stated by the instrument, as follows: "Now, therefore, in consideration of the premises and of one dollar received, and to secure the full and punctual payment of all of said draft and eight notes and all interest·that may accrue thereon," etc.

There is nothing in the instrument to show that a certain part of said plantation is pledged to secure the payment of any certain note or that a certain part of any of the personalty conveyed is conveyed to secure any given note. The whole property is conveyed to secure the payment of the whole indebtedness. No particular crop is devoted to the payment of any particular note. The argument of inconvenience resulting from the necessity of holding a crop from one year to another has no application in the case at bar; people have the right to contract as they see fit. The funds derived from the sale of the crop were on hand, and the deed of trust was a lien upon these funds, and the court ordered the note paid from these funds. There can be no doubt that if the crop had been on hand and unsold, there would have been a lien upon the crop.

Section 1937 of the code provides that the administrator may apply to the court to determine whether or not a creditor is entitled to a lien claimed upon property in his hands. Accordingly, the administrator filed his petition, setting out the uncontroverted facts, and, in referring to the West deed of trust, setting forth that the holder of said note, which was probated against the estate, claimed a lien upon the proceeds of the cotton produced on the West plantation then in his hands.

Upon this petition an order was entered by the court decreeing that said deed of trust was a lien upon the said funds arising from the sale of said cotton, and ordering the adminis-

trator to pay said notes out of said funds.   The note, voucher 8, was accordingly paid in pursuance of this order.

Argued orally by *Samuel R. Coleman,* for appellant, and by *E. L. Mounger,* for appellee.

TRULY, J., delivered the opinion of the court.

Upon an appeal of one branch of this case, reported in 82 Miss., 93 (s.c., 33 South. Rep.; 946), this court decided upon the facts contained in that record that the creditors of the estate of W. A. Bounds were not entitled to have the administrator removed, and that the administrator and his bondsmen were not properly chargeable with certain alleged assets of the estate of W. A. Bounds, which the chancellor had decided as a finding of fact had been retained by the widow and had never come into the actual or constructive possession of the administrator.   Upon the case made by that record the petition of the creditors was dismissed.   Subsequently, after due and regular proceedings, the estate of W. A. Bounds was declared to be insolvent.   Pending the insolvency proceedings, but before the decree of insolvency was rendered and before publication to creditors to present their claims for examination and adjudication, the heirs of W. A. Bounds, joining the creditors of his estate, filed certain exceptions to the report of the administrator, which, upon consideration by the chancellor, were disallowed, as having been "filed out of time."   After the necessary proceedings in the insolvent estate had been completed, the administrator filed his final account, and, as required by law, all parties in interest were duly summoned to appear and file exceptions to the allowance thereof.   Thereupon the heirs and creditors filed certain exceptions to such final account of the administrator, only two of which we deem of sufficient importance to merit consideration.   One exception sought to have the administrator charged with the value of a stock of goods which it was averred was owned by W. A. Bounds at the date of his death.   Testimony on both sides

bearing on this question was taken by the chancellor, and after full consideration he decided that the proof did not sustain the contention of the exceptors, and did not prove either the existence of the stock of goods as an asset of the estate or that the goods came into the possession, actual or constructive, of the administrator.   There is sharp conflict in the testimony; and while the testimony of the widow—seemingly corroborated by the inventory, which she swears contains an actual statement of the contents and the value of the stock of merchandise which she avers the intestate died in possession of, and which she retained with the full knowledge and consent of the administrator—is positive and direct, still, in view of the unequivocal denial of the administrator, coupled with other testimony in the case, we cannot say that the conclusion of the chancellor upon this finding of fact is manifestly wrong, and the decree disallowing this exception is therefore affirmed.

The second exception to the final account presented by the administrator sought to surcharge that account with the item contained in voucher No. 8 thereto, which is as follows: "1901, April 4th.   J. B. West note secured by D. T. on crops, $3,276.84."   This exception was by the chancellor also disallowed, and the correctness of his ruling in that regard is challenged on this appeal.   Preliminary to the investigation of this proposition, however, it is said by the appellee that the same question was involved in the appeal of the other branch of this administration hereinbefore referred to, and that this contention of appellants was there decided adversely to their position.   We do not think this question determined by that adjudication.   It is true that the point was presented in one of its phases on that appeal, but not in the exact shape in which it is now before us.   At the time when the petition of the creditors of the estate was presented on appeal, the estate had not been declared insolvent; and the final account of the administrator, while filed, was still pending, and this court could not decide in advance of the final action by the chancellor as

to the correctness of any certain allowance or claim until the final account of the administrator was presented and duly considered and passed upon. It did not, therefore, devolve upon this court upon that appeal to decide more than was necessary to determine the merits of the petition then before it. A perusal of the opinion of the court then rendered will show that the action of the chancellor in this regard was not reviewed, and that this question was not considered nor decided, but the opinion pivoted upon an entirely different point. In order to pass advisedly upon the merits of the exception here considered, it becomes necessary to review the facts, some of which were not necessarily involved in the decision upon the former appeal, and, therefore, not specifically brought to the attention of the court. W. A. Bounds died intestate on January 11, 1900. At the date of his death he was the owner, in addition to other lands, of the Beauty plantation, which he had purchased from J. B. West. At this date there remained due upon the purchase money of said plantation three notes, aggregating originally approximately $25,000, maturing, respectively, January 1, 1900, 1901, 1902. At the date of the purchase of the Beauty plantation, December 9, 1896, Bounds had executed a trust deed to secure the vendor's lien notes representing the deferred payment of the purchase money, five in number, running over a term of years, including therein not only the lands constituting the Beauty plantation, but also conveying, as shown by the recitals of the instrument, "all the crops of cotton, corn, and all other agricultural products grown on or yielded by said lands during the years 1897, 1898, 1899, 1900, and 1901, as also all rents, issues, profits, income, and benefits yielded by or arising from said lands during said years." The cotton crop and products on the Beauty plantation grown during the year 1899, consisting of 174 bales, were unsold at the date of the death of W. A. Bounds, and came into the hands of the administrator, constituting the entire assets of

said estate, with the exception of some exempt insurance money and certain minor matters not necessary here to detail. Very shortly after the death of W. A. Bounds the Beauty plantation was advertised for sale under a junior trust deed resting thereon, and on the 2d day of February, 1900, the plantation, and all live stock thereon, and 1,000 bushels of corn, and 60 tons of cotton seed were sold by the trustees and conveyed to Mrs. M. J. Bounds, the widow of the decedent, the purchase price paid being $26,560, the amount actually due under the junior trust deed. On February 5, 1900, the administrator paid to J. B. West the vendor's lien note maturing January 1, 1900, amounting to $3,443.15, out of the funds of the estate of W. A. Bounds, and also about the same time paid sundry smaller bills due by the estate, being chiefly expenses incident to the last illness and funeral of the decedent. Subsequently, after some transactions, not necessary to narrate to a clear understanding of the single question here involved, on the 20th day of February, 1901, Mrs. M. J. Bounds, the purchaser of the Beauty plantation at the trustee sale aforesaid, conveyed to G. A. Wilson, individually, an undivided one-half interest in said plantation, work stock, farming implements, and other personal property thereon, for a stated consideration of $1,500 in cash. The instrument contains this stipulation: "The right of the said Wilson to his half interest of the said property hereby conveyed to him is to begin when I shall have paid off and discharged the debt bought by the Delta Bank of Mrs. H. A. McDonald and purchase-money notes to J. B. West and B. L. Jones, Ed. Jones and Mrs. Mary V. Jones." The debt referred to as having been bought by the Delta Bank from Mrs. McDonald, being that which was represented by a trust deed executed by Mrs. Bounds to secure the money advanced to purchase the property at the trustee sale, which had been given to Mrs. McDonald, and subsequently assigned to the Delta Bank. At the date of this conveyance, which vested the title of the

Beauty plantation in Mrs. M. J. Bounds and George A. Wilson, there remained due and unpaid two of the vendor's lien notes executed by W. A. Bounds to J. B. West, and these were the "purchase-money notes" referred to in the recital above quoted, and upon the satisfaction of which, together with the other indebtedness, was predicated the right of Wilson to enjoy any interest in the property. After this deal had been consummated, by which Wilson, individually, upon the contingency above set out, had acquired an undivided half interest in the property, Wilson, as administrator of the estate of W. A. Bounds, petitioned the chancellor for an order to apply the funds in his hands, which had been derived from the sale of the cotton crop of 1899, to the satisfaction of the lien notes which matured in 1901 and 1902, asserting in this petition "that the two last notes secured by said deed of trust are unpaid and are a lien on the funds in his hands, and amount to more than the said fund;" whereupon, on this *ex parte* representation, the chancellor, on the 3d day of April, 1901, authorized the administrator "to pay the money in his hands arising from the sale of the mortgaged property on the debt secured thereon to J. B. West, or holder of said notes." We think this order of the chancellor error. The direct effect was to divert the entire funds of the estate of W. A. Bounds from the payment of his just debts and apply the same to the satisfaction of certain notes which were fully secured by vendor's lien on a plantation undeniably worth many times the amount remaining due on the purchase money, and which, by the agreement between Mrs. Bounds and Wilson in his individual capacity, Mrs. Bounds had undertaken to pay, as she was obligated by operation of law to do, and upon the payment of which Wilson's interest in the lands was entirely dependent. It was practically authorizing G. A. Wilson, administrator, to apply the entire assets of the estate for the benefit of G. A. Wilson, individually.

Aside from this, the order was based upon a palpable mis-conception of the law. Even should it be conceded that after the sale of the Beauty plantation under the junior trust deed the vendor's lien notes then unmatured still rested as debts against the estate until the security of the land had been re-sorted to and exhausted, yet under no circumstances could the notes falling due in 1901 and 1902 be construed to be liens upon the proceeds of the crops produced in 1899, under the language of the trust deed executed by W. A. Bounds to J. B. West. The manifest intent of that trust deed was that the crop of each year should secure the payment of the note ma-turing during that crop season. So the note falling due January 1, 1900, was a lien upon the crop produced during the agri-cultural crop season of 1899–1900, and, therefore, properly payable out of the proceeds thereof. This was done by the ad-ministrator, and the legality of that action is not questioned by the appellants. So, again, the note maturing January 1, 1901, was a lien upon the crop grown on the land, by whom-soever produced, during the season 1900–1901, and should have been paid out of the proceeds of that specific crop. But although the record discloses that the plantation was culti-vated by its new owners during the year 1900, we note the remarkable fact that no portion of the proceeds of that crop was applied to the payment of the purchase-money note, but this note is, upon the petition of the administrator, paid out of the crop of 1899. The contention of appellee that the trust deed in question carried a running lien on all the crops produced during the entire term of years for the payment of each and every vendor's lien note, without regard to the date of the maturity thereof, is plainly unsound. To so hold would be to say that the purchaser of the crop grown during one year upon a plantation covered by a similar trust deed, though all the liens maturing that year were fully paid and satisfied, might, after the lapse of several years, be called upon to pay

again the value of the property purchased, because some other note, maturing in another and subsequent year, had not been promptly paid. Such a meaning was evidently not in the minds of the contracting parties, and such an interpretation of the contract would do violence to a well-established business usage and custom.

It is contended by appellee that the administrator is protected by Code 1892, § 1937, which provides a method for testing the validity of the claim of any creditor that he has a lien on any property of the decedent. But that section has manifestly no application here. In the instant case no proceeding was instituted by the administrator to test the validity of any claim of lien asserted by West. But of his own motion, without notice to any one, the administrator filed a petition not only not contesting the existence of the lien, but erroneously averring that the lien did exist, and voluntarily asking permission to apply the entire funds of the estate to the satisfaction of a claim which was neither a lien debt nor a preference claim. Nor does it appear that West ever contended that he had any lien on the funds of the estate to protect the payment of the vendor's lien note maturing January 1, 1901, or that he took any action seeking to subject the funds to such payment. This note was fully secured on the land and the crop of 1900, and West seems to have been content to let it wait for several months after maturity, and until it was voluntarily discharged by appellee, who, as before shown, had in the meantime acquired a half interest in the land on which it rested as a prime lien. We hold, therefore, that the note to J. B. West maturing January 1, 1901, was not a lien upon the crop produced in the year 1899, and was not properly payable as a lien debt out of the funds of the estate of W. A. Bounds. Wherefore this exception to the final account of George A. Wilson, administrator, should have been sus-

tained, the item surcharged, and the amount put into the corpus of the estate for distribution according to law.

*Reversed, and remanded for decree in accordance with this opinion.*